HAMLIN, Justice:
This disbarment proceeding, Art. VII, Sec. 10, La.Const, of 1921, concerns Dan A. Spencer, a Member of the Louisiana State Bar Association and a resident of Shreveport, Louisiana.
On December 13, 1965, this Court, in the case of Spencer v. Dixon, 248 La. 604, 181 So.2d 41, found Dan A. Spencer guilty of direct contempt of this Court as defined in Article 222(3) of the Code of Civil Procedure and Rule IX, Section 4, of the Rules of this Court. He was sentenced to imprisonment for twenty-four hours in the Parish Prison of the Parish of Orleans and ordered to pay a fine of one hundred dollars and the costs of the proceeding.[1] *119 He served the .imprisonment and paid his fine.
On December 20, 1965, the Committee on Professional Ethics and Grievances of the Louisiapa State Bar Association (hereinafter designated as • the Committee) addressed a communication to Spencer, in. which it stated:
*121 “In order to determine whether or not you have been guilty of a violation or violations of the laws of the State of Louisiana relating to the professional conduct of lawyers and to the practice of law, or whether or not you have been guilty of a wilful violation of the rules of professional ethics of sufficient gravity as to evidence on your part a lack of moral fitness for the practice of law, the Committee on Professional Ethics and Grievances of the Louisiana State Bar Association has undertaken an investigation of certain conduct on your part as a member of the Bar of Louisiana. In the event you are found guilty, you may be subject to disciplinary action, which may include disbarment, suspension, or formal reprimand.”
The alleged unethical conduct was set forth in four specifications, which recite:
“Specification No. 1. That in the application for a rehearing filed in the matter bearing No. 47,921 of the docket of the Supreme Court of Louisiana you did include language in violation of Section 4 of Rule IX of the rules of said Court. That more specifically the language employed by you charged:
“(A) that the Supreme Court was attempting to protect the district judge as there existed no legal ground upon which to deny your application for writs, and that such denial constituted a fraud of your rights, and
“(B) that under the law you were entitled to the relief sought, and that the court was dishonest in denying you this relief, and that the court in denying your application disregarded the statutes and laws of this state.
“Specification No. 2. That upon being cited by the Supreme Court for contempt for the use of the language as set forth in Specification No. 1 upon appearing before said court on November 7, 1965 you not only refused to apologize or recant but before the entire court and in open court when asked by Justice Walter B. Hamlin if you really believed that the court was dishonest you replied that you did.
“Specification No. 3. That having been found guilty of contempt by the Supreme Court, you were sentenced to serve twenty-four (24) hours in prison. Upon your release on November 9, 1965 you did in an interview with personnel from WDSU-TV state in effect that you were unrepentent and that although your actions may get you disbarred you were sticking to your guns. While on camera you stated words to the effect that the set up of the Supreme Court of Louisiana was an anachronism of our time, that these judges had set themselves up as dictators in their own little kingdom and that you could criticize the President or other members of the Government without having charges filed against you *123 but that if you criticized the Supreme Court of Louisiana you would summarily be placed in jail without due process of law.
“Specification No. 4. That in The Shreveport Journal, Friday, November 12, 1965, the following statement was allegedly made by you:
“ ‘In a suit against Judge John Dixon of Caddo Parish and Dozier Webster, clerk of court, Caddo Parish, I applied for an order directing Judge Dixon to render judgment in a case that had been tried before him, and directing the clerk of court to notify the state auditor of the judge’s failure to render the judgment within the time allowed by law for so doing.
“ ‘The lower courts refused to grant this order and an application was made to the Supreme Court for review. A Louisiana statute provides that upon the filing of such a suit, an order shall automatically be issued directing the defendant public official to perform his duty or to show some reason why he should not be required to. There are no exceptions to this rule and it is the mandatory duty of the court to issue such an order.
“ 'When the Louisiana Supreme Court denied the application, I accused them of attempting to protect Judge Dixon, and of dishonesty and fraud in their decision in the case. I was then cited for contempt by the Court.
“ ‘Since the charges I made were against all of the justices of the Supreme Court a motion was made to recuse them in order to obtain an impartial and unbiased hearing. This motion was denied. The only defense asserted was that the charges made against the justices were true. The court refused to grant a hearing on these charges and denied the right to call witnesses for the defense. I was summarily held in contempt in a proceeding devoid of any of the requisites of a fair trial.
“ ‘The court imposed the maximum sentence possible against an attorney and ordered the sentence served immediately. They refused to entertain a motion for a stay of execution of the sentence in order to allow time to obtain a review of the case by the United States Supreme Court.
“ ‘Once a sentence has been served, the case becomes moot and one no longer has the right of review by a higher court. The Louisiana Supreme Court ordered the sentence served immediately in order to prevent a review of the case by the United States Supreme Court. It was a deliberate attempt on their part to avoid a hearing on the charges made against them.
*125 " 'In the case of Garrison vs. Louisiana, [379 U.S. 64, 85 S.Ct. 209, 13 L. Ed.2d 125] decided last year by the United States Supreme Court, it was held that the New Orleans District Attorney had a constitutional right to make truthful criticism of certain judges of that city. The principle of law established in that case would be applicable here.’ ”
On January 18, 1966, an investigatory hearing was held; and, on March 21, 1966, the Louisiana State Bar Association, appearing through the Committee, filed in this Court a petition for the disbarment of Dan A. Spencer, alleging, “That your Committee on Professional Ethics and Grievances, in accordance with the rules of this Honorable Court, has conducted a full investigation of certain alleged misconduct on the part of respondent, and after full hearing had, in accordance with said rules, the Committee is unanimously of the opinion that respondent has been guilty of violations of the laws of the State of Louisiana of sufficient gravity to warrant his disbarment, and that he has been guilty of such willful violation of the rules of professional ethics as to evidence on his part a lack of moral fitness for the practice of law.”
Spencer caused the matter to be removed to the United States District Court for the Eastern District of Louisiana. On June 24, 1966, Judge Ainsworth ruled that the matter had been improvidently removed and remanded it to the Supreme Court of Louisiana.
Spencer filed his answer, issue was joined, and Robert G. Pugh was appointed Commissioner by this Court to take evidence and report his findings of fact and conclusions of law.
On June 2, 1970, the Commissioner filed his report in this Court. He stated:
“Obviously an attorney of longer standing at the bar, with full knowledge of the difference between respectful, fair and candid criticism and scandalous abuse of the courts, would have responded differently to the question propounded by Justice Hamlin. But such was not the case here. A young lawyer wrote and spoke brassly and thus Specifications 1 and 2 are proven and for this, he must be punished.”
The Commissioner found that Spencer had been punished by fine and imprisonment; he posed the question of whether that was enough.
The Commissioner held that Spencer could not be held accountable for Specifications Nos. 3 and 4 in this proceeding. “The recourse, if any,” he said, “is one of libel, either civil or criminal.” His report concluded :
“The public’s best interest would be served by giving Spencer the benefit of any doubt and-upon taking into consideration all of the facts and circumstanc *127 es herein, it would seem that a proper reprimand, administered to Spencer by the Court, would be sufficient punishment herein for 'To deprive one of an office of this character would often be to decree powers [poverty] to himself and destitution to his family. A removal from the Bar should therefore never be decreed where any punishment less severe — such as reprimand, temporary suspension, or fine would accomplish the end desired.’ [Bradley vs. Fisher, 13 Wall 335, 80 U.S. 335, 355, 20 L.Ed. 646.]”
On June 18, 1970, the Louisiana State Bar Association through the Committee filed in this Court a concurrence to the Report of the Commissioner. It prayed “that the Commissioner’s findings of fact, and conclusions of law be accepted and affirmed, and that after due proceedings had there be judgment herein striking Respondent’s name from the Roll of Attorneys and cancelling his license to practice law in the State of Louisiana or whatever lesser punishment the Court finds appropriate.”
Exceptions to the findings of fact and the conclusions of law of the Commissioner were filed in this Court by Spencer.
The matter was submitted to us on printed briefs without oral argument. The Louisiana State Bar Association prays for appropriate action; the defendant moves for dismissal of the Committee’s petition.
The Committee’s proceedings of January 18, 1966, offered in evidence at the Committee’s proceedings of August 14, 1967, disclose that in January, 1966, Spencer was twenty-seven years of age, a graduate of Tulane University’s Law School (he worked his way through law school), and a practicing attorney of slightly less that a year. Spencer stated that he had been in the Naval Reserve, having had two years of active duty and four subsequent years in the Reserve Corps.
Spencer, during 1965 and 1966, was imbued with the correctness of his cause, which is described herein in Footnote 1; he had a misunderstanding with respect to the judgment of the trial judge; he became critical and disrespectful. His belief in the soundness of his cause seemed to blind his judgment. This belief was extended to this Court to the extent that it violated our Rule 9, Sec. 4, and constituted contempt under Article 222(3) of the Code of Civil Procedure.[2] See, Footnote 1, supra. The transcript of the proceedings *129 definitely reveals, however, that Spencer’s views were restricted to the case of Leahy v. Ford, Walker & Hearn, Inc., No. 168,469 of the Docket of the First Judicial District Court of Caddo Parish.[3] This finding is affirmed by the following testimony given by Spencer at the conclusion of the hearing of January. 18, 1966:
“THE CHAIRMAN:
“Mr. Spencer, do you have anything further that you would like to offer?
“THE RESPONDENT:
“Well, I would just like to say this: I think you probably realized that I have been doing what I thought was right and I didn’t feel like at any time that I made these statements that it was unethical to do so, and I have cited you some authority to the effect that it wasn’t,. and apparently you all disagree with me. Well, this Committee is the final authority in this state 'for deciding this matter, and my future actions, of course, are going to be governed by your telling me that it is unethical to criticize a judge or to make any statements similar to what I did, and, if it is, well, I am simply going to have to refrain from that.
“Frankly, I have spent a lot of time and a lot of money on this whole case, and I’d like to forget the whole matter, but, be that as it may, I shall have to govern my actions by your decision in the case.
“THE CHAIRMAN:
“Now, if you were to appear in the Supreme Court again under a similar situation, would you do this again?
*131 “THE RESPONDENT:
“No, sir, I don’t believe I would in view of the things that you have — the views you have all expressed about it.
“THE CHAIRMAN:
“What about you? What is your thinking?
“THE RESPONDENT:
“Well, I have been of the view—
“THE CHAIRMAN:
“Is it because of a deterrent hanging over your head that you wouldn’t do this, or you don’t see the error of your ways?
“THE RESPONDENT:
“That is part of it, and part of it is just that I think I might have used a little bit better judgment in my language to the Court. I didn’t accomplish what I set out to do, and it looks like the method I tried to use to get them to change their opinion in the case was ineffective, so I certainly wouldn’t subject myself to going through this thing again. I don’t intend to.”
We find that Specifications Nos. 1 and 2, supra, were proved before the Committee. Spencer’s conduct was offensive to this Court. He has been punished, and we are at this time constrained to admonish him only by reprimand for his expressions. The exercise of our power of disbarment is not required under the facts and circumstances of this proceeding.[4] However, respondent should realize that if he repeats the conduct we are now reviewing, he could render insupportable the continuance of his practice of law as a Member of the Louisiana State Bar Association.
Specifications Nos. 3 and 4, supra, will not be considered by this Court; Spencer is not accountable herein for them.
*133 For the reasons assigned, Dan A. Spencer is hereby reprimanded; otherwise, the disbarment proceeding against him is dismissed at his costs.
SUMMERS and BARHAM, JJ., concur.
DIXON, J., takes no part.
Rehearing denied.
BARHAM, J., is of the opinion a rehearing shoud be granted on the .issue of costs.
DIXON, J., does not participate.

. In order that the reader might have an understanding of the events leading up to our decision, we quote it almost in its entirety. It reads:
“This contempt proceeding arose under the following circumstances:
“Dan A. Spencer, attorney at law of Shreveport, Louisiana, as counsel for the plaintiff in the case of Bert J. Leahy v. Ford, Walker, & Hearn, Inc., No. 168,469 on the docket of the First Judicial District Court of Caddo Parish, filed a petition in that court praying that a rule issue against Judge John A. Dixon, Jr., judge of the First Judicial District, to show cause upon a date to be fixed by the court why he should not render judgment in the Leahy case, and praying also that a rule issue against Dozier Webster, clerk of that court, to show cause why he should not be ordered to notify the state auditor of the failure of Judge Dixon to render judgment within 30 days of the submission of the Leahy ease. This petition with the customary orders attached was presented to Judge Henry F. Turner, another judge of that court, who refused to sign the orders for the rules and for the issuance of the alternative writs of mandamus.
“The attorney Spencer then applied to the Court of Appeal, Second Circuit, for a writ of certiorari, asking for review of the refusal of Judge Turner to sign the orders and asking also for a writ of mandamus ordering Judge Turner to sign the orders. The respondent Judge Turner *113 filed an answer to the application in the Court of Appeal, in which he stated that he refused to sign the orders for the reason, among others, that ‘An inspection of the minutes of this court reveals that Judge Dixon did render a judgment in the case of Bert J. Leahy vs. Ford, Walker, & Hearn, Inc. number 168,469 on the docket of this court and that said judgment has now been read, signed and filed’. The Court of Appeal denied the application, saying: ‘Applicant’s petition as plaintiff in suit shows that an opinion was rendered.’ Spencer then sought relief in this court under our supervisory jurisdiction.
“Spencer instituted these proceedings in the district court under R.S. 13 :4207 and 13:4210. R.S. 13:4207 makes it the mandatory duty of a district judge to render judgment in each case taken under advisement by him within 30 days of the time the case was submitted for his decision. R.S. 13:4210 provides that any district judge who shall violate this provision shall forfeit one quarter’s salary for each violation. In addition this latter section makes it the mandatory ■duty of the clerk of court to notify the state auditor of the failure of the judge to render his decision within the time prescribed, and requires the auditor upon receiving such notification to withhold from the judge the payment of one quarter’s salary and to pay this amount into the general school fund.
“In considering the application for writs this court noted that although the return of the district judge made to the ■Court of Appeal stated that according to the minutes in the Leahy case the judgment had ‘now been read, signed and filed’, this return did not disclose the ■date on which the judgment was rendered or show that it had been rendered within 30 days after the case had been submitted for decision. Therefore, to ■aid. in our disposition of the application we 'requested that the clerk of the First Judicial District Court send to us a certified copy of the minutes in the Leahy ■case relied on by the district judge. In due course this court received these minutes, certified to be correct by Inez M. Stancel, deputy clerk of the First Judicial District Court, Caddo Parish. The minutes disclosed that on June 25, 1965, the case was closed, argued, and submitted, and that on this same day judgment was rendered in favor of the plaintiff.
“The record of this case in the district court revealed nothing which could have caused Judge Turner not to follow the mandate of Article 3865 of the Code of Civil Procedure that ‘Upon the filing of a petition for a writ of mandamus, the court shall order the issuance of an alternative writ directing the defendant to perform the act demanded, or to show cause to the contrary.’ However, the judge’s return to the Court of Appeal stated that in the Leahy case judgment had now been road, signed, and filed, and the certified copy of the minutes of that court disclosed that the judgment was rendered on the day the case was submitted. Consequently, in view of the minutes and the district judge’s return, it would have been a vain and useless thing to exercise our supervisory jurisdiction and order the record transmitted to this court, for the record as made up would disclose that judgment in the Leahy case had been rendered by Judge Dixon on the very day the ease was submitted. In other words, according to the return of the district judge and the certified copy of the minutes the question of the rendition of the judgment by the trial judge had become moot. Moreover, as long as the minutes show that the judgment was rendered on the very day the case was submitted, it would be improper to order the clerk to notify the auditor that the judge failed in his duty to render a judgment within the time required.
“Because of all this, this court refused Spencer’s application for writs, stating:
“ ‘In view of the fact that the return of the district judge, together with certified copy of the minutes of the trial court, shows that in the case of Bert J. Leahy v. Ford, Walker, & Hearn, Inc., No. 168,469 on the docket of the First *115 Judicial District Court for the Parish of Caddo, a judgment was rendered within 30 days after the case was submitted, the application for writs is denied.’
“For the reasons given, this court was clearly correct in denying Spencer's application for writs under both the law and the facts of this case. Spencer, however, filed an application for a rehearing to our refusal of his application for writs; and it is in this application for rehearing that he made certain charges and statements which caused this court on September 29, 1965, to issue the rule whereby lie was ordered to show cause in this court on November 8, 1965, why he should not be held in contempt of this court.
"In his application for rehearing Spencer charged in substance that this court ignored express statutory law in refusing his application for writs, that this court was dishonest in so doing, that it was attempting to protect the district judge, and that all of this constituted a fraud of his rights. In his application for rehearing he also charged that the minutes which disclosed that judgment had been rendered in the Leahy ease on the day the case was submitted were erroneous, and on information and belief he alleged that a fraud had been practiced on this court by the forgery of these minutes.
“On September 30, 1965, Spencer’s application for a rehearing was refused. * * * In denying this application the court pointed out that applicant’s remedy, if any, was to institute proceedings in the district court to correct the minutes of that court. By this we meant that if applicant could establish that the minutes were incorrect, false, untrue, or forged and that the judgment in the Leahy ease was not rendered or if rendered not rendered within 30 days after the case was submitted, then applicant could institute proceedings in the district court for the relief initially sought — that is, to compel the judge to render the. judgment and the clerk to notify the auditor that the judge had failed to render a decision within the time prescribed by law.
“Article 221 of the Code of Civil Procedure says:
“ ‘A contempt of- court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority.
“ ‘Contempts of court are of two kinds, direct and constructive.’
“Rule IX, Section 4, of the rules of this court, which became effective on April 1, 1962, provides:
“ ‘The language used in any brief or document filed in this court must be courteous, and free from insulting or irrelevant criticism of any person, individually or officially, or of any class or association of persons, or of any court of justice, or other institution. Any violation of this rule shall, subject the author or authors of the brief or document to the humiliation of having the brief or document returned, and to punishment for contempt of the authority of the court.’
“Article 222 of the Code of Civil Procedure defines a direct contempt as one which is committed in the immediate view and presence of the court and of which, it has personal knowledge, and then sets out certain acts which constitute direct contempt of court. One of these is set forth in Subsection (3) as follows: ‘Use of insulting, abusive, or discourteous-language by an attorney or other person * * * in a pleading * * * or other document filed with the court in irrelevant criticism * [4] • of a judge or officer of the court.’
“Thus the charges made by Spencer in his application for a rehearing constitute under the law of this state a direct contempt of court. These charges-are highly defamatory and insulting, bring the administration of law into disrespect or disregard, and impair the dignity of the court and respect for its authority. Spencer as an attorney and officer of' the court, irrespective of what his personal views may be of the incumbent judges, is under a duty to maintain a respectful attitude toward the court as. *117 such. His conduct in the case tends to create distrust and to destroy the confidence of the people in the court.
“In his opposition to the rule for contempt Spencer admitted that he made the charges set out above. In justification of these charges he pleads as his sole defense the truth of the charges, but justification does not constitute a defense to a contempt of court such as we have here. -* * *
“Respondent Spencer filed a motion in these proceedings for a trial by jury. This motion is without merit. Contempt proceedings under the laws of this state are summary proceedings. C.C.P. Arts. 221-227. Under these articles a person charged with constructive contempt is proceeded against by rule, whereas under Article 223 a person who has committed a direct contempt of court may be found guilty and punished therefor by the court forthwith and without any trial other than an opportunity to be heard orally by way of defense or mitigation. Although Spencer, who committed a direct contempt, could have been found guilty and punished forthwith pursuant to Article 223, we proceeded against him by rule and allowed him to file written motions. This being a summary proceeding, however, he was not entitled to a trial by jury, for Article 1733 of the Code of Civil Procedure expressly provides that a trial by jury shall not be available in a summary proceeding.
“Spencer’s theory is that this proceeding is criminal in nature, and he contends that for this reason he is entitled to a trial by jury. Every if this theory were correct, his contention would be without merit. Both our Constitution and our Code of Criminal Procedure provide that misdemeanor eases — that is to say, cases in which the punishment may not be at hard labor — are triable by the judge without a jury. La.Const. of 1921, Art. 7, Sec. 41; La.Codc Crim.Proc. Art. 340. Our laws do not permit imprisonment at hard labor for contempt.
“In support of this contention respondent relies on the Sixth and Fourteenth Amendments to the Constitution of the United States and on United States Supreme Court decisions. Neither these provisions of the federal Constitution nor the cited cases are applicable in the instant case.
“Respondent also filed a motion to recuse the seven justices of this court, alleging that they were biased and not impartial and for this reason should be recused. We are acting in a purely impersonal manner to maintain the dienity of and respect for this court, for which we have full authority, and the motion for recusation is without merit. * * *
K * * ‡
“Spencer argues that because of the bias and prejudice of the members of this court the failure of this court to sustain his motion to recuse all members of this court denied to him due process as guaranteed by the Fourteenth Amendment.
“Citation of an attorney for contempt of court is a serious matter, and the courts of this state, reluctant to punish an attorney for contempt, exercise this power sparingly. For this reason we afforded Spencer every opportunity to be heard orally by way of defense or mitigation, in the hope that he would purge himself of the charge. This he steadfastly refused to do, and in language used in his written opposition and in oral argument before the court he aggravated his original offense. Moreover, he was allowed to argue the legal questions which he chose to raise in motions filed in this court. Thus ho was afforded a greater right than the law gives to a person who has committed a direct contempt, for, as stated previously, under Article 223 of the Code of Civil Procedure he could have been found guilty without any trial other than an opportunity to be heard orally by way of defense or mitigation. Under these circumstances we are at a loss to know how he could claim to have been denied due process.
.“In support of his motion to recuse Spencer cites authorities, especially Holt v. Com. of Virginia, 381 U.S. 131, 85 *119 S.Ct. 1375, 14 L.Ed.2d 290. A reading of this case and the other decisions cited by him will disclose that they are in no way pertinent, relevant, or controlling here.
“For the reasons assigned, after a hearing held on November 8, 1965, we found the respondent Dan A. Spencer to be guilty of direct contempt of this court, and we rendered the following decree:
“Whereas the court on November 8, 1965, heard the rule for contempt issued against Dan A. Spencer, of Shreveport, Louisiana, on September 29, 1965 (a certified copy of which is attached hereto), for having used language in the application for rehearing filed by him in the above entitled and numbered cause which in effect charged (1) that this court is attempting to protect the district judge, as there existed no legal ground upon which to deny the relief sought, and that such denial constituted a fraud of his rights; (2) that under the law he was entitled to the relief sought and that this court was dishonest in denying his this relief, and that this court in denying his application disregarded the statutes and laws of this state — all as shown by his application for rehearing filed in this court on September 3, 1965, a certified copy of which is attached hereto ;
“Whereas Dan A. Spencer appeared in this court in proper person on the 8th day of November, 1965, and was given the opportunity to be heard on the charge of contempt of this court made against him;
“Whereas the Chief Justice gave the respondent in rule Spencer the opportunity to purge himself and to employ counsel to represent him and advise him in this contempt proceeding, which was refused;
“Whereas Dan A. Spencer argued his motions for a trial by jury and for recusation of the judges of this court, both of which motions were.denied;
“Whereas the said Dan A. Spencer represented to the court that his only defense-was the truth of the statements made in the said application for rehearing;
“Whereas Associate Justice Walter B-Hamlin urged upon the said Dan A. Spencer that he surely did not mean his-charge that this court was dishonest in-refusing him the relief he sought, and
“Whereas the said Dan A. Spencer replied that he did consider this court to-be dishonest;
“The court therefore finds the respondent Dan A. Spencer guilty of direct contempt of this court as defining in Article 222(3) of the Code of Civil Procedure and Rule IX, Section 4, of the rules of' the court, and ho is sentenced to imprisonment for twenty-four hours in the Parish Prison of the Parish of Orleans-, and ordered to pay a fine of one hundred ($100.00) dollars and the costs of this-proceeding, said fine and costs to be paid' to the clerk of this court.
“Read, rendered and signed at New Orleans, Louisiana, this 9th day of November, 1965.
“(s) Jno. B. Fournet,
Chief Justice
“(s) Joe B. Hamiter,
Associate Justice
“(s) Frank W. Hawthorne,
Associate Justice
“(s) E. Howard M’Caleb,
Associate Justice
“(s) W. B. Hamlin,
Associate Justice
“(s) Joe W. Sanders,
Associate Justice
“(s) Frank W. Summers,
Associate Justice”'

. “The language used in any brief or document filed in this court must be courteous, and free from insulting or irrelevant criticism of any person, individually or official!;', or of any class or association of persons, or of any court of justice, or other institution. Any violation of this rule shall subject the author or authors of the brief or document to the humiliation. of having the brief or document returned, and to punishment for contempt of the authority of the court.” Rule 9, Sec. 4, Louisiana Supreme Court Rules.
“A direct contempt of court is one *129 committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious' failure to comply with a subpoena or summons, proof of service of which appears of record.
“Any of the following acts constitutes a direct contempt of court:
“ * * *
“(3) Use of insulting, abusive, or discourteous language by an attorney or other person in open court, or in a pleading, brief, or other document filed with the court in irrelevant criticism of another attorney or of a judge or officer of the court;
“ * * * ” Art. 222, LSA-C.C.P.

. In his report, the Commissioner states: “On his side of the ledger, Spencer had witnessed the following events:
“(1) The rendition of an opinion he could not interpret or have explained;
“(2) The recordation of a minute entry in which the monetary figure was different from those in the opinion;
“(3) The preparation of a judgment, the monetary figures of which were different from the opinion and the minute entry;
■ “(4) One district judge refusing to sign an order concerning which the statute left no discretion, this on the basis of a minute entry not before him;
“(5) The Court of Appeals refusing writs on the grounds that ‘applicant’s petition as plaintiff in suit shows that an opinion was rendered,’ when it was not in his petition; and
“(6) The Supreme Court calling direct to the District Court to obtain a copy of the minute entry.”